IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

CAROLYN I. BRYAN,              )
                               )
            Plaintiff,         )
                               )
v.                             )   Case No. CIV-11-242-KEW
                               )
MICHAEL J. ASTRUE,             )
Commissioner of Social         )
Security Administration,       )
                               )
            Defendant.         )

**OPINION AND ORDER**

Plaintiff Carolyn I. Bryan (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

two inquiries:  first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied.  Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted).  The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The court may not re-weigh the evidence nor substitute its discretion for that of the agency.  Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991).  Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight."  Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on July 5, 1952 and was 57 years old at the time of the ALJ's decision.  Claimant completed her high school education and completed vo-tech training as a certified nursing assistant.  Claimant worked in the past as a data entry clerk,

sales clerk, nurse assistant, social services activity director, accounting clerk, and hospital admitting clerk. Claimant alleges an inability to work beginning February 5, 2008 due to limitations resulting from back pain, hip pain, and left leg pain.

## Procedural History

On June 3, 2008, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On August 7, 2009, an administrative hearing was held before ALJ Osly F. Deramus in McAlester, Oklahoma. On April 2, 2010, the ALJ issued an unfavorable decision. On June 15, 2010, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform her past relevant work as a data entry clerk, office worker, or hospital admitting clerk.

## Errors Alleged for Review

4

Claimant asserts the ALJ committed error in (1) failing to properly develop the record; (2) failing to properly evaluate the evidence related to Claimant's mental impairments; and (3) failing to properly evaluate the medical opinion of Claimant's treating physician.

### Duty to Develop the Record

On December 27, 2007, Claimant began treatment with her physician, Dr. Gregory Rogers, for low back pain. (Tr. 219-20). On February 14, 2008, Claimant returned to Dr. Rogers who assessed her with chronic lower back pain, lumbar degenerative joint disease, lumbar strain, hypertension, and bilateral sciatica versus lumbar radiculopathy. Dr. Rogers stated Claimant "will definitely need CT or MRI" if her condition persisted. (Tr. 215-17). On February 19, 2008, Dr. Rogers noted improvement but that Claimant was still experiencing daily pain. He diagnosed Claimant with acute lumbar strain, muscle spasm, chronic lower back pain, and sciatica versus radiculopathy. Dr. Rogers indicated that Claimant needed a CT scan or MRI when she could afford it. (Tr. 213-14).

On June 17, 2008, Claimant reported to Dr. Rogers that she was "highly stressed from her own and her families' difficulties." Dr. Rogers found Claimant to have increased paravertebral tone and lumbar lordosis and piriformis tenderness. (Tr. 210). He

5

diagnosed Claimant with chronic lower back pain, lumbar degenerative joint disease, bilateral sciatica, suspected lumbar radiculopathy, depression, stress reaction, chronic anxiety, hypertension, and recurring headaches. Dr. Rogers began treating Claimant with medication for major depressive disorder. (Tr. 211).

On this same date, Dr. Rogers completed a Physical Residual Functional Capacity Questionnaire on Claimant. He related his diagnosis of chronic lower back pain, spinal muscle spasms, and sciatica vs. radiculopathy. His prognosis was "poor" because the condition was considered to be chronic. Dr. Rogers stated Claimant's lower back pain included aches and burning pains and occasional shooting pains that go down the hips and into the legs. Pain was routinely rated at 5/10 with the worst 9/10. He noted increased paravertebral tone in the lumbar spine, significant point tenderness in L4-5 area, maintaining pressure to these areas greatly increased pain and caused radiation. Lumbar spine series showed abnormal lumbar curve and L5-S1 degenerative changes. (Tr. 205).

Dr. Rogers also noted Claimant suffered from anxiety and family stress. He believed Claimant's pain would frequently interfere with attention and concentration need to perform even simple work tasks. He estimated Claimant can sit for 2 hours at one time and stand for 15 minutes. Dr. Rogers stated that Claimant

"has lots of stress and can't tolerate much more than she has." In an 8 hour workday, Claimant could stand/walk for less than 2 hours and sit for at least 6 hours. Claimant needed a job that permits shifting positions at will and in which he can take unscheduled breaks. Dr. Rogers stated Claimant could frequently carry less than 10 pounds, occasionally carry 10 pounds, rarely carry 20 pounds and never carry 50 pounds. He found Claimant could occasionally look down, frequently turn her head to the left or right and hold her head in a static position, and rarely look up, twist, stoop, crouch/squat, and climb ladders. He noted significant limitations in Claimant's ability to reach. He found Claimant would experience good days and bad days and is likely to be absent about four days per month. (Tr. 206-08).

On July 17, 2008, Dr. Thurma Fiegel recommended that an additional physical examination be obtained with motion, gait, nerve root compression, and use of hands. Dr. Fiegel also recommended a further mental evaluation. (Tr. 255).

On July 24, 2008, Dr. Ron Smallwood completed a Psychiatric Review Technique form on Claimant. He concluded Claimant suffered from affective disorders - depressive syndrome characterized by sleep disturbance and difficulty concentrating or thinking. He also determined Claimant suffered from anxiety disorder. (Tr. 256-69).

7

On August 7, 2008, Claimant was evaluated by Dr. Mohammed Quadeer. Claimant reported that she experienced joint stiffness and swelling and muscle pain. Dr. Quadeer found Claimant's cervical and thoracic-lumbar spine to be non-tender with full range of motion. The lumbar-sacral spine was non-tender with limited range of motion associated with muscle spasms and pain. He found no scoliosis, increased kyphosis, or increased lordosis was noted. Straight leg raising was negative bilaterally in both the sitting and supine positions. Dr. Quadeer determined Claimant's gait to be safe and stable with slow speed. She did not ambulate with the aid of an assistive device and had no identifiable muscle atrophy. Heel/toe walking was weak. Dr. Quadeer diagnosed Claimant with chronic low back pain, probably due to degenerative disc disease, hypertension, under control with medication, hypoglycemia, non-insulin dependent diabetes mellitus, and overweight. (Tr. 270-76).

On March 12, 2009, Claimant sought treatment for low back pain at the E.A. Conway Medical Center at Louisiana State University Health Services Center. She was treated with a Depomedrol injection. (Tr. 314-15). Additional medication was prescribed in a follow-up visit on April 9, 2009. (Tr. 294). Treatment for muscle spasms began later that month. (Tr. 290).

On June 3, 2009, Claimant was treated by Dr. Barnette for back pain. X-rays indicated her lumbar spine showed straightening of

her normal lordosis, probably from the muscle spasms. Dr. Barnette treated Claimant with injections and medication. (Tr. 288).

On September 23, 2009, Dr. Barnette followed up with Claimant's degenerative joint disease. Claimant reported the shots helped but that she was suffering from stiffness and tingling in her right lower extremity. Dr. Barnette administered additional injections. (Tr. 308).

On November 2, 2009, Claimant sought treatment for hypertension and degenerative joint disease. She stated he back goes out about every two to three months and will be out for one to two weeks before she recovers. She also indicated she was suffering numbness in her right leg from the knee down. (Tr. 307).

Claimant first contends the ALJ should have developed the record in ordering a consultative CT or MRI scan. Generally, the burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability. Branam v. Barnhart, 385 F.3d 1268, 1271 (10th Cir. 2004) citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987). A social security disability hearing is nonadversarial, however, and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." Id. quoting Henrie v. United States Dep't of Health & Human

Services, 13 F.3d 359, 360-61 (10th Cir. 1993). As a result, "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." Id. quoting Carter v. Chater, 73 F.3d 1019, 1022 (10th Cir. 1996). This duty exists even when a claimant is represented by counsel. Baca v. Dept. of Health & Human Services, 5 F.3d 476, 480 (10th Cir. 1993). The court, however, is not required to act as a claimant's advocate. Henrie, 13 F.3d at 361.

The duty to develop the record extends to ordering consultative examinations and testing where required. Consultative examinations are used to "secure needed medical evidence the file does not contain such as clinical findings, laboratory tests, a diagnosis or prognosis necessary for decision." 20 C.F.R. § 416.919a(2). Normally, a consultative examination is required if

> (1) The additional evidence needed is not contained in the records of your medical sources;
>
> (2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, . . .
>
> (3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources;
>
> (4) A conflict, inconsistency, ambiguity or insufficiency in the evidence mus be resolved, and we are unable to do so by recontacting your medical source; or

(5) There is an indication of a change in your condition
that is likely to affect your ability to work.

20 C.F.R. § 416.909a(2)(b).

Despite Dr. Rogers' insistence that Claimant needed a CT or MRI scan in order to properly evaluate her back condition, the ALJ determined insufficient objective medical evidence existed in the record to follow Dr. Rogers opinions regarding the severity of Claimant's condition. On remand, the ALJ shall obtain further consultative testing of Claimant's back condition.

Claimant also contends the ALJ should have ordered a further mental consultative examination based upon the recommendation of Dr. Fiegel. Dr. Fiegel recommended a further physical evaluation as well as mental. (Tr. 255). The ALJ obtained the physical consultative but not the mental. (Tr. 270-76). On remand, the ALJ shall develop the record further with regard to Claimant's mental condition by obtaining a consultative examination.

### Claimant's Mental Impairments

Claimant asserts the ALJ improperly ignored evidence in the record as to Claimant's mental condition. The ALJ did not reference the findings of Dr. Rogers or Dr. Smallwood with regard to Claimant's mental condition in his decision. Claimant was consistently diagnosed with depression, anxiety, and stress at various times during her relationship with Dr. Rogers. (Tr. 206,

210-11). Dr. Smallwood also found Claimant suffered from depression and anxiety. (Tr. 256, 259). She also testified concerning the affect these conditions had upon her daily activities. (Tr. 41). On remand, the ALJ shall consider the totality of the medical evidence and re-evaluate Claimant's mental condition.

### Opinion of Treating Physician

Claimant also contends the ALJ improperly rejected the opinions of her treating physician, Dr. Rogers. The ALJ found that his opinion "contrasts sharply" with his records. (Tr. 20). He gave Dr. Rogers' opinions on limitations "little weight" because Dr. Rogers released Claimant to do light duty work the next week if she was "doing well." (Tr. 20, 214). From subsequent treatment records and Dr. Rogers opinion on Claimant's ability to work, he did not believe she was "doing well." The ALJ also found the treatment afforded by Dr. Rogers was not consistent with one who was truly limited to the extent claimed. The ALJ cannot substitute his medical treatment opinion for that of the treating physician as he has done in this case. Miller v. Chater, 99 F.3d 972, 977 (10th Cir. 1996).

Moreover, the ALJ must give a treating physician's opinion controlling weight, unless the opinion is unsupported by the

12

medical record. In evaluating the opinions of a treating physician such as Dr. Rogers, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support

or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted). The basis given for the wholesale rejection of Dr. Rogers opinions is not sufficient to have given them virtually no weight. On remand, the ALJ shall re-evaluate Dr. Rogers' opinions in light of his medical records and in accordance with the Watkins factors.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent

with this Opinion and Order.

IT IS SO ORDERED this 24th day of July, 2012.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE